UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF            ) | |
| THE EXTRADITION OF          )      Misc. No. 2:07-MC-099 KJM | |
| HERIBERTO SANCHEZ REA       ) | |
|                             ) | |
|                             ) | |

### CERTIFICATION OF EXTRADITABILITY
### AND
### ORDER OF COMMITMENT

On October 4, 2007, the Court received a Complaint in this matter filed by Russell L. Carlberg, Assistant United States Attorney for the Eastern District of California, acting on behalf of the Government of Mexico. The Complaint requested the provisional arrest with a view toward extradition of fugitive HERIBERTO SANCHEZ REA, aka ERICK [extraditee], wanted on the charge of homicide in Mexico. Acting on the Complaint, United States Magistrate Judge Kimberly J. Mueller issued a provisional arrest warrant for the extraditee under 18 U.S.C. § 3184 and Article 11 of the Extradition Treaty between the United States and the Republic of Mexico.

HERIBERTO SANCHEZ REA was arrested in the Eastern District of California on November 8, 2007, and was promptly arraigned before this Court, the Hon. Dale A. Drozd, United States Magistrate Judge,

presiding.  This Court ordered the extraditee detained pending an extradition hearing under 18 U.S.C. § 3184.

On January 4, 2008, Mexico complied with its treaty requirements by providing the formal request for extradition and supporting documents to the Department of State within the 60 days it has from the date of the provisional arrest.

On January 30, 2008, at 10:00 a.m., the extraditee, assisted by the Court's sworn Spanish language interpreter, appeared before this Court in open session.  The extraditee was accompanied by his attorney, Assistant Federal Defender Timothy Zindel.  Assistant United States Attorney Russell L. Carlberg appeared for the Republic of Mexico.

The Court's inquiry at the extradition hearing is to determine the following questions: (a) whether the undersigned judicial officer is authorized to conduct the extradition hearing; (b) whether jurisdiction lies; (c) whether there is an extradition treaty in full force and effect between the requesting state (Mexico) and the requested state (the United States); (d) whether the crime alleged in the charging instrument (homicide) is covered by the treaty; and (e) whether competent legal evidence amounting to probable cause establishes that there is good reason to believe that the extraditee committed the crime alleged. <u>Ornelas v. Ruiz</u>,

161 U.S. 502, 510 (1896); Zanazanian v. United States, 729 F.2d 624, 626 (9th Cir. 1984).

Based on the information and documents admitted into evidence at the hearing, including the documentation that the Republic of Mexico and the United States Department of State provided in open court, the Court makes the following findings of fact and conclusions of law:

1. The undersigned judicial officer is authorized under Title 18, United States Code, Section 3184, and Eastern District of California Local Rule 72-302(b)(8) to conduct an extradition hearing.

2. This Court has personal jurisdiction over the extraditee and subject matter jurisdiction over the case; the extraditee is currently in custody in the Eastern District of California, and jurisdiction is thereby established. See In re Panzienza, 619 F. Supp. 611, 616-18 (S.D.N.Y. 1985).

3. There is an extradition treaty in full force and effect between the United States and Mexico, 31 U.S.T. 5059, TIAS 9656 (1980 WL 309106). Not only does the Court admit the treaty as evidence and take judicial notice of it, the Court also finds that the Declaration of Gregory B. Wierzynski (as certified by Secretary of State Condoleezza Rice), Attorney Advisor in the Department of

State's Office of the Legal Adviser, stating that the treaty is in full force and effect, establishes that the treaty is, indeed, in full force and effect. <u>See</u> Wierzynski Decl. at ¶ 3. The Wierzynski Declaration also attaches Diplomatic Note #17, which the Court also receives, admits into evidence, and takes judicial notice of.

    4. Under federal statute, this Court "shall" receive and admit into evidence documents that the requesting state (Mexico) provides if "the principal diplomatic or consular officer of the United States resident" in the requesting state certifies that the documents are "properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped." 18 U.S.C. § 3190. The Declaration of Gregory B. Wierzynski certifies that Leslie A. Bassett, chargé d'affaires, ad interim, was the principal diplomatic or consular officer of the United States resident in Mexico on December 28, 2006. Wierzynski Decl. at ¶ 6. In turn, the beribbonned certification of Leslie A. Bassett, under official seal, complies with the terms of Title 18, United States Code, Section 3190, by certifying that the attached documents from the requesting state (Mexico) are "properly and legally authenticated so as to entitle them to be received in

CERTIFICATION OF EXTRADITABILITY AND
ORDER OF COMMITMENT
CASE NO. 2:07-MC-099 KJM                                                                    **4**

evidence for similar purposes by the tribunals of The United Mexican States." Accordingly, this Court receives into evidence the entire extradition package, including the documents that Mexico has submitted as Exhibits 1 through 14, inclusive, in both Spanish and English versions.

    5.   The extraditee, HERIBERTO SANCHEZ REA, is charged in Mexico with the crime of homicide, or murder, covered by and punishable under Articles 201 and 202, of the Penal Code of the State of Guanajuato, Mexico, as they existed at the time the offense was committed. Exh. 1 [State Prosecutor's Criminal Complaint]; Ex. 3 [Text of Legal Provisions]. On January 14, 1997, the Hon. Carlos Rodriguez Granados, Judge of First Instance in Criminal Matters of the Judicial District of Silao, Guanajuato, Mexico, issued a warrant for the arrest of HERIBERTO SANCHEZ REA in criminal case number 216/1996. Ex. 2 [Arrest Warrant]. The arrest warrant has been certified as still in full force and effect because the statute of limitations for murder has not run. Exh. 4 [Text of Legal Provisions Governing Statute of Limitations]; Exh. 4A [Judicial Decree Certifying Arrest Warrant in Force].

    6.   The Extradition Treaty provides that "[e]xtradition shall take place ... for wilful [sic] acts which fall within any of the clauses of the Appendix are are punishable in accordance with the

laws of both contracting parties by deprivation of liberty the maximum of which shall not be less than one year." TIAS 9656 at Art. 2, ¶ 1. The crime of murder is specifically included in the Appendix to the Extradition Treaty. In Mexico, the offense of murder is punishable by a term of imprisonment of eight to twenty years. Exh. 3. In determining whether a similar criminal proscription exists under American law, the Court looks first to federal law; if no similar offense is found, the Court then looks to the law of the State in which the extraditee is found; if no similar offense is found, the Court then looks to the law of the preponderance of the States. <u>Cucuzella v. Keliikoa</u>, 638 F.2d 105, 107 (9th Cir. 1981).

Under Title 18, United States Code, Section 1111(a), murder is defined as the willful, unlawful killing of another with malice aforethought. Murder is defined in terms of first and second degrees. 18 U.S.C. § 1111(a). First degree murder is punishable by death or life imprisonment. 18 U.S.C. § 1111(b). Second degree murder is punishable by life imprisonment or a "term of years." <u>Id</u>. Whether defined as first or second degree murder, then, the maximum term of imprisonment is certainly at least one year under federal law. Accordingly, the Court finds that the crime of murder

is covered by the treaty and is a crime for which Mr. HERIBERTO SANCHEZ REA may be extradited.

Moreover, the Court finds that even if federal law were not somehow sufficient as a basis for extradition, then, in all events, the law of the State of California would be sufficient to establish that murder is proscribed and punishable in accord with the requirements of the Extradition Treaty. California defines murder similarly to the federal statute, carrying a similar range of punishment, all of which exceed one year. See Cal. Penal Code §§ 187(a), 189 & 190(a). Further, the Court notes that murder is one of the oldest common law crimes, has traditionally carried severe penalties exceeding one year of imprisonment, and is outlawed in all fifty states. Therefore, the Court finds also that under the law of the preponderance of the States that the crime of murder is one for which Mr. SANCHEZ REA may be extradited.

7. In determining whether "the evidence [is] sufficient to sustain the charge under the provisions of the proper treaty," 18 U.S.C. § 3184, this Court reviews the evidence under the familiar "probable cause" standard that would apply at a preliminary examination. Ornelas, 161 U.S. at 512. Probable cause is not proof that would be required to convict at a trial; nor does it rise even to the civil standard of preponderance of the evidence;

rather, it is whether there is "proof furnishing good reason to believe that the crime alleged has been committed by the person charged with having committed it." Ornelas, 161 U.S. at 512 (quotation omitted). In other words, this means evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. Coleman v. Burnett, 477 F.2d 1187, 1202 (D.C. Cir. 1973). In making this determination, the Federal Rules of Evidence and the Federal Rules of Criminal Procedure do not apply. Zanazanian v. United States, 729 F.2d 624, 626-27 (9th Cir. 1984) (citations omitted). Even unsworn statements contained in police reports are competent evidence, so long as they are certified under 18 U.S.C. § 3190. Id.

As previously found, above, the evidence in this case has been properly certified under Section 3190. Moreover, Mexico has gone beyond the legal requirements and has provided sworn witness statements signed under penalty of perjury.

The Court has reviewed all of this evidence. The Court has also considered the presentation of the Assistant United States Attorney in open court. Based on the evidence admitted, the Court concludes that there is probable cause to believe the extraditee

CERTIFICATION OF EXTRADITABILITY AND
ORDER OF COMMITMENT
CASE NO. 2:07-MC-099 KJM                                                                 **8**

committed the offense for which extradition is sought, and hereby finds the following facts:

On October 26, 1996, HERIBERTO SANCHEZ REA, aka ERICK, was drinking alcoholic beverages with several other individuals including the victim, Francisco Sanchez Cuellar, in Silao, Guanajuato, Mexico. Those persons, including Luis Sanchez Cuellar, Juan Gabriel Ibarra Sanchez, and Eulalio Ibarra Sanchez, provided statements to Mexican law enforcement authorities within days of the shooting.  Exh. 6 [Sworn Statement of Luis Sanchez Cuellar, 10/31/1996]; Exh. 11 [Sworn Statement of Juan Gabriel Ibarra Sanchez, 11/6/1996]; Exh. 12 [Sworn Statement of Eulalio Ibarra Sanchez, 11/8/1996].  According to these witnesses, around 12 a.m., without immediate provocation, HERIBERTO SANCHEZ REA pulled out a firearm and fired between three to five shots into the victim's body, at close range, in an alleyway. Witnesses observed that Francisco Sanchez Cuellar was hit several times and lay bleeding on the ground.  Luis Sanchez Cuellar went after the extraditee, who aimed the weapon at him and threatened to shoot him, too.  Exh. 6.  Witnesses corroborate each other in stating that Luis Sanchez Cuellar struggled with HERIBERTO SANCHEZ REA over the weapon, throwing it toward a house, and that during the

struggle HERIBERTO SANCHEZ REA was able to flee the scene. Exh. 6, 11, 12.

Witnesses also state that HERIBERTO SANCHEZ REA was seen earlier that day firing rounds from a weapon into the sky. They state that the extraditee and his family were known to possess firearms.

Witnesses corroborate each other in recounting that, earlier on the evening of the shooting, HERIBERTO SANCHEZ REA had challenged the victim to a fight. During the fight, the extraditee had acted as though he pulled a weapon from his waist and fired it at the victim. Apparently, he was using only his hands as a mock weapon. Bystanders scolded the extraditee for making the threatening gesture, at which point the extraditee became very angry and left. He returned hours later with the weapon and shot the victim.

After he shot the victim, the extraditee was seen running down the street. He ran to his house and shouted to "open the door," adding that he had "just killed him." Exh. 10 [Sworn Statement of Margarita Oviedo Dominguez, 11/5/1996]; Exh. 13 [Statement by Lourdes Sanchez Oviedo]. A store-keeper, awakened in the night by the gunshots, stepped out into the street where witnesses told him that HERIBERTO SANCHEZ REA had just shot "Pancho," meaning

Francisco Sanchez Cuellar.  Exh. 5 [Sworn Statement of Angel Valdiva Palomares, 10/27/1996].

Medical authorities confirmed that Francisco Sanchez Cuellar died the next day from shock resulting from loss of blood caused by bullet wounds in the arm, abdomen, and lower back.  Exh. 7 [Ministerial Attestation of Corpse, 10/27/1996]; Exh. 8 [Autopsy Report10/28/1996].  The final autopsy opinion confirms that Francisco Sanchez Cuellar died from blood loss caused by the bullet wounds. Exh. 9 [Autopsy Medical Opinion, 10/28/1996]. Medical authorities estimate that the victim would have lived another 22 years had he not been shot.  Id.

In 2004, witnesses identified a photo of HERIBERTO SANCHEZ REA as the man who shot Francisco Sanchez Cuellar.  Exh. 14.

The extraditee has not contested his identity as the person accused of this crime.  The Court has reviewed the physical descriptions and photographs of the extraditee and finds that he is the same HERIBERTO SANCHEZ REA accused of the crime of murdering Francisco Sanchez Cuellar on or about October 26, 1996.  This Court finds that the extraditee's identity has been established and that there is probable cause to believe he committed the offense for which extradition is sought.

Based on the foregoing findings, the Court concludes that the extraditee is extraditable for the offense for which extradition was requested, and certifies this finding to the Secretary of State as required under Title 18, United States Code, Section 3184.

IT IS THEREFORE ORDERED THAT a certified copy of this Certification of Extraditability be delivered by the Clerk to Assistant United States Attorney, Russell L. Carlberg, for transmission to the Secretary of State;

AND IT IS FURTHER ORDERED THAT HERIBERTO SANCHEZ REA be committed to the custody of the United States Marshal for this District pending final disposition of this matter by the Secretary of State and the arrival of agents of the requesting state, at which time the extraditee will be transferred to the agents of the requesting state for return to Mexico.

IT IS SO ORDERED.

DATED: February 4, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Ddad1/orders.criminal/sanchezrea0099.ord

CERTIFICATION OF EXTRADITABILITY AND
ORDER OF COMMITMENT
CASE NO. 2:07-MC-099 KJM                                                                 12